**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

_____

| | | |
|---|---|---|
| CHRISSANDRA WALKER, an individual, | : | Case No. 2:21-cv-00870 |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| 777 NINTH STREET NORTH OPERATIONS, LLC D/B/A HERITAGE HEALTHCARE AND REHABILITATION CENTER A/K/A CONSULATE HEALTH CARE, | : | |
| Defendant. | : | |

_____

**COMPLAINT & DEMAND FOR JURY TRIAL**

CHRISSANDRA WALKER ("Plaintiff", "WALKER"), by and through her attorneys, alleges and states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, WALKER, brings this action against 777 NINTH STREET NORTH OPERATIONS, LLC, D/B/A HERITAGE HEALTHCARE AND REHABILITATION CENTER A/K/A CONSULATE HEALTH CARE (hereinafter, "DEFENDANT"), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"); AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 as amended, 29 U.S.C.A. 621 *et. seq.* ("ADEA") and AMERICANS WITH DISABILITIES ACT of 1990 ("ADA") as amended by the ADA AMENDMENTS ACT of 2008 ("ADAAA"), 42 U.S.C.A. §§ 12101 to 12213 (collectively, the "ADA").

1

2. DEFENDANT provides senior healthcare services to the elderly.

3. WALKER is an African-American woman, who is over the age of forty (40) years old and who suffers from a disability.

4. In 2013, DEFENDANT hired WALKER as the Nursing Home Administrator because she was well qualified for the job and has approximately thirty (30) years of experience in this field.

5. WALKER was responsible for the day-to-day operations which included the supervision of over one hundred (100) employees, and oversight of ninety-seven (97) beds for patients at the DEFENDANT'S facility located at 777 9th Street N., Naples, Florida 34102 (herein referred to as "Facility").

6. Despite WALKER's stellar job performance and many accomplishments, DEFENDANT subjected her to racial, color, age, and disability discrimination in the workplace.

7. DEFENDANT unlawfully terminated WALKER in or around June 2020.

## JURISDICTION

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII, ADEA, and ADA.

## VENUE

9. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practice was committed in Florida, 42 U.S.C. § 2000e-5(f)(3), in that the relevant employment records are maintained in this district, 42 U.S.C. § 2000e-5(f)(3), in that WALKER worked in this district and would have continued to if the issues discussed herein had not occurred.

10. The DEFENDANT has its principal office in this district, and there is no other district that has a substantial connection to the claim.

## CONDITIONS PRECEDENT

11. In or around January 12, 2021, WALKER timely filed a charge of racial, color, age, and disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

12. On or about August 24, 2021, the EEOC issued WALKER a Notice of Right to Sue.

13. This Complaint has been filed within ninety (90) days of receipt of that notice.

14. WALKER has fully complied with all prerequisites to jurisdiction in this Court under Title VII, ADEA, and ADA.

## PARTIES

15. WALKER is a Black woman who is domiciled in Fort Myers, Florida. WALKER is a citizen of the United States of America.

16. WALKER was an employee, as defined by Title VII.

17. Upon information and belief, Defendant is an employer as defined by Title VII and within 42 U.S.C.A. § 2000e(b) and whose principal place of business is in Naples, Florida.

## FACTS

18. DEFENDANT discriminated against WALKER due to her race, color, age, and disability.

19. WALKER was unlawfully terminated in violation of Title VII, ADEA, and ADA.

20. On or around March 11, 2020, the World Health Organization declared the coronavirus (COVID-19) as a global pandemic.

21. WALKER attempted to implement procedures that all patients and staff wear N95 masks because elderly residents were at a higher risk for severe illness.

22. Additionally, WALKER refused to admit new patients into the Facility if they were not wearing a mask and/or if they had not tested negative for COVID-19 to ensure safety for the patients and staff.

23. DEFENDANT demanded that WALKER admit new patients, including patients who were not wearing masks, and patients who tested positive for COVID-19.

24. DEFENDANT terminated WALKER for "endangering residents" despite her efforts to keep the residents and staff safe.

25. DEFENDANT's cited reason for terminating WALKER, was not the true reason it terminated WALKER.

26. DEFENDANT did not terminate WALKER's peers who were not minorities, were younger, and who did not appear to suffer from a disability even though they did not take the safety precautions that WALKER took.

27. During the pandemic, DEFENDANT offered a bonus to employees who worked extra hours.

28. DEFENDANT did not receive the bonus that her peers (who were non-African American, younger, who did not appear to suffer from a disability) received.

29. WALKER asked her Supervisor about the discrepancy and was told "you all have a problem."

30. Prior to DEFENDANT's termination, WALKER advised that her father had cancer and she need to take some time off. However, DEFENDANT failed to provide Family and Medical Leave ("FMLA") information to WALKER, even though the information was regularly offered to non-African American, younger employees who did not appear to suffer from a disability.

31. WALKER suffers from diabetes and walks with a limp.

32. After WALKER's termination, WALKER was not provided with the Consolidated Omnibus Budget Reconciliation Act ("COBRA") information, which was also regularly offered to non-African American, younger employees who did not appear to suffer from a

disability.

33. DEFENDANT failed to compensate WALKER for her expenses and all the days that she worked prior to being unlawfully terminated.

## **Count I**
### **Race and Color Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)**

34. WALKER repeats and realleges paragraphs 1 through 33 hereof, as if fully set forth herein.

35. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their Race and Color.

36. WALKER is an African American female with colored skin and is a member of a protected class.

37. DEFENDANT discriminated against WALKER based on her Race and Color.

38. WALKER was qualified for her position as a Nursing Home Administrator; however, she was prevented from performing her job to keep patients and staff safe from COVID-19 due to her Race and Color.

39. Additionally, WALKER was not provided with employment benefits that other non-African American peers would receive due to her Race and Color.

40. As a direct, legal, and proximate result of the discrimination, WALKER was terminated and has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages.

41. DEFENDANT immediately replaced WALKER with a non-African American person without colored skin.

42. DEFENDANT'S unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on her Race and Color.

43. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

**Count II**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. §§ 2000e et al.**

44. WALKER repeats and realleges paragraphs 1 through 33 hereof, as if fully set forth herein.

45. Prior to WALKER's termination, WALKER reported to the DEFENDANT'S Chief Executive Officer ("CEO") that her immediate Supervisor interfered with her job duties, including but not limited to hiring a non-African American employee with a higher salary than an African American employee for a similar job.

46. WALKER's Supervisor came to WALKER's work location in an attempt to intimidate WALKER with Human Resource Personnel in attendance.

47. On or around July 2019, in retaliation of WALKER reporting racially discriminatory information to the CEO, WALKER's Supervisor denied her vacation after knowing that WALKER prepaid for her vacation.

48. WALKER's Supervisor undermined WALKER's directives to her employees by allowing patients into the facility without Personal Protective Equipment ("PPE") and/or without testing negative for COVID-19.

49. Additionally, in 2020, WALKER's father was critically ill; and was scheduled to be transferred to Hospice. WALKER's Supervisor refused to allow WALKER to leave the Facility to visit her father and failed to offer her Family Medical and Leave which was offered to non-African American employees.

50. Upon termination, WALKER was not offered COBRA that was offered to non-African American employees.

## Count III
### Age Discrimination in Employment Act of 1967,
### 29 U.S.C.A. §§ 621 et. seq.

51. WALKER repeats and realleges paragraphs 1 through 33 hereof, as if fully set forth herein.

52. WALKER was over the age of forty (40) years old, at the time that the DEFENDANT terminated her.

53. WALKER was qualified for the Nursing Home Administrator position.

54. WALKER was subjected to an adverse employment action when DEFENDANT unlawfully terminated her.

55. WALKER was later replaced by someone who was younger than forty (40) years old and was treated differently or less favorably from younger employees.

56. WALKER suffered damages as a result of DEFENDANT's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, attorney fees and the costs of bringing this action.

## COUNT IV
### Disability Discrimination in Violation of Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA amendments Act Of 2008 ("ADAAA"), 42 U.S.C.A. §§ 12101 To 12213 (Collectively, The "ADA")

57. WALKER repeats and realleges paragraphs 1 through 33 hereof, as if fully set forth herein.

58. WALKER is disabled by a physical impairment that substantially limits one or more major life activity.

59. WALKER was otherwise qualified to perform the essential functions of her job with the DEFENDANT.

60. WALKER was subjected to unlawful discrimination because of her disability.

61. WALKER was replaced by an individual who does not appear to suffer from a disability.

62. WALKER suffered damages as a result of DEFENDANT'S unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, attorney fees and the costs of bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff damages which include but are not limited to past and future loss of wages and benefits, retirement benefits, plus interest;

C. In lieu of reinstatement, award Plaintiff front pay (including benefits);

D. Award to Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

F. Award to Plaintiff compensatory damages; and

G. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated this 22nd day of November 2021.

> Light Path Law, P.A.
> *Attorneys for Plaintiff*
> 3620 Colonial Blvd. #130
> Fort Myers, FL 33966
> Phone: (239) 689-8481

Fax: (239) 294-3930
kscott@lightpathlaw.com (Primary)
dclark@lightpathlaw.com (Primary)
cirick@lightpathlaw.com (Secondary)

By: /s/ Kristie A. Scott

Kristie A. Scott
Florida Bar No. 108111
Danielle N. Clark, Esq.
Florida Bar No. 1022298